IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

KENT A. PARRISH                                                      PLAINTIFF

               v.                         Civil No. 12-3115

CAROLYN W. COLVIN[1], Commissioner
Social Security Administration                                      DEFENDANT

## <u>MEMORANDUM OPINION</u>

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision

of the Commissioner of Social Security Administration (Commissioner) denying his claim for a

period of disability and disability insurance benefits (DIB) and supplemental security income("SSI")

under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the

court must determine whether there is substantial evidence in the administrative record to support

the Commissioner's decision. *See* 42 U.S.C. § 405(g).

###    I.      Procedural Background:

Plaintiff filed his applications for DIB and SSI on January 27, 2011, alleging an onset date

of July 1, 2007, due to plaintiff's brain tumor, three mini-strokes, memory loss and back, arm and

shoulder problems.   Plaintiff's applications were denied initially and on reconsideration.  Plaintiff

then requested an administrative hearing, which was held on December 16, 2011.  Plaintiff was

present and represented by counsel.

At the time of the administrative hearing, plaintiff was 57 years of age and possessed a

G.E.D..  He also completed a year in business school, Air Conditioning fundamentals and major

appliances repair.  (T. 37).  Plaintiff  had past relevant work ("PRW") experience as an Oil Change

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013.  Pursuant to Rule 25(d)(1) of the Federal
Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this
suit.

Technician. (T. 160).

On March 16, 2012, the Administrative Law Judge ("ALJ") concluded that Plaintiff does not have a severe impairment or combination of impairments. (T. 13).

## II.    Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. As the court explains, "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory

2

diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003).  Only if the final stage is reached does the fact finder consider the plaintiff's age, education and work experience in light  of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).  The procedure of terminating the process at step two has been upheld by the United States Supreme Court in *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287 (1987).  As the defendant correctly pointed out, the determination is carried out as follows:

> [W]e consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509 or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  (ECF No. 9, p. 9).

The duration requirement that is named in this explanation requires that an impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509, 416.909.  While this standard demonstrates that the severe medically determinable physical or mental impairment must have lasted or is expected to last for twelve months, Plaintiff vigorously argues that this standard is incorrect, citing SSR 99-3p.  However, as the noted portion of SSR 99-3p deals only with individuals age 72 or older and Plaintiff was 57 at the time of the hearing, it does not apply.  SSR 99-3p (1999).

III.     **Discussion**:

On appeal, Plaintiff contents that the ALJ's decision is not supported by substantial evidence because the ALJ ended the sequential evaluation process at step two, concluding that none of Plaintiff's impairments constituted a severe impairment.  However, it is the finding of this court that the ALJ fully developed the record and relied on substantial evidence to conclude that Plaintiff does not have a severe impairment or combination of severe impairments.

A.     **Non-Severe Impairments**

An impairment or combination of impairments is considered "severe" if it significantly limits an individual's physical or mental abilities to do basic work activities.  *See Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (O'Connor, J., concurring).  To qualify as "not severe," an impairment must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the individual's ability to do basic work activities.  *See* Social Security Ruling (SSR) 85-28.

Alleged impairments may not be considered severe when they are stabilized by treatment and otherwise are generally unsupported by medical record.  *Johnston v. Apfel*, 210 F.3d 870, 875(8th Cir. 2000); *see also Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000) (plaintiff bears the burden to establish severe impairments at step two of the sequential evaluation).  Thus, the plaintiff has the burden of showing a severe impairment that significantly limits his physical or mental ability to perform basic work activities, but the burden of a plaintiff at this stage of the analysis is not great.  C*aviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

1.     **Physical Impairments**

Plaintiff alleges as part of his disability claim that he suffered from a brain tumor, three mini-strokes, memory loss and back, arm and shoulder problems. (T. 256).  He also  alleges that he suffers

from pain in his head, right shoulder, left hip and left elbow.  (T. 41).  He explained that his hip is

never pain-free and that he is at a 5 or 6 level of pain.  (T 42).  He described his pain in his right

shoulder as a 4 or 5 and as a constant pain, but "excruciating" at night.  (T. 44).  He stated that his

elbow pain occurred in the summer of 2011.  (T. 45).  He also explained that he had severe pain in

his big toe on his left foot and a shooting pain in his left leg.  (T. 47).  Furthermore, he states that he

has a diminished ability to concentrate and that he needs reminding and written instructions to care

for his personal needs.  (T. 215).

In his Pain Questionnaire, Plaintiff contends that it "always hurts" when he stands or walks

and that it hurts for "an hour or so" when he sits.  (T. 163).  His Function Report stated that his

injuries affected lifting, stair climbing, kneeling, squatting, using hands, seeing, bending, memory,

concentration and following instructions.  (T. 170).

### a.    Medical evidence

Plaintiff alleges that he sustained a brain aneurysm in 1984 and has an alleged onset date of

July 1, 2007 for his other listed impairments, including three mini-strokes, memory loss and back,

arm and shoulder problems.  (T. 184). The medical records that Plaintiff produced do not, for the

most part, relate to the alleged impairments.  Plaintiff went to Baxter Regional Center on December

14, 2007 after being involved in a car accident, not to proactively seek medical treatment. (T. 250)

Preexisting degenerative changes with osteophyte formation were noted at the time, especially the

C5-C6 and C6-C7 areas.  (T. 243).  However, no acute hemorrhage or mass was found when the

medical staff performed a CT examination of Plaintiff's head. (T. 243-244).  A history of headaches

after a motor vehicle accident was noted, but there is no record of any further treatment for his

injuries.  (T. 244).  According to Plaintiff, he refused treatment for the brain aneurysm that

developed in 1984. (T. 256).

Plaintiff also supplied a medical report from Baxter Regional Center for August 2, 2011. (T. 310). According to the report, he was there to re-check his elbow that had been drained during the same week. (T. 310). Plaintiff reported that he had experienced pain, redness and swelling related to the bursitis. (T. 311). Plaintiff was given a prescription for cephalexin and acetaminophen. (T. 311). No long-term treatment plan was provided for this condition. (T. 311). Plaintiff provided another set of medical records related to a suspected bout of heat exhaustion on July 29, 2008. (T. 322). The treating physician did not indicate any long-term treatment needed for this condition either, but rather advised Plaintiff to stay hydrated and to avoid heat for prolonged periods of time for the next few days. (T. 323).

In spite of Plaintiff's explanation of his various points of moderate to severe pain, there is no evidence that Plaintiff sought an evaluation or that he complained to any treating physician that he had these impairments with the exception of the checkup regarding his drained elbow. It is true that, "[w]hile not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem ." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir.1995).

Additionally, there is no evidence that Plaintiff's brain tumor, mini strokes, memory loss or back, arm and shoulder pain have more than a minimal impact on his ability to work. The ALJ stated that there is no evidence in the record to demonstrate that Plaintiff has received an opinion by a treating physician regarding his ability to work.. (T. 21).

The ALJ also notes that Plaintiff failed to follow up on recommendations made by a treating doctor, especially by not quitting smoking and drinking. (T. 21). *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment . . . weighs

6

against a claimant's credibility."). In general, the failure to obtain follow-up treatment indicates that a person's condition may not be disabling or may not be as serious as alleged. *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir.1995) (holding "[g]iven his alleged pain, Shannon's failure to seek medical treatment may be inconsistent with a finding of disability"). While Plaintiff alleges that he did not seek medical treatment because he was financially unable to do so, there is no evidence that Plaintiff has been denied medical treatment due to financial constraints or that he attempted to obtain low cost or no-cost treatment .*See Clark v. Shalala*, 28. F.3d 828, 831 n. 4 (8th Cir. 1994); *Murphy v. Sullivan*, 953 F.2d 383, 386 (8th Cir. 1992). In fact, Plaintiff reported to Dr. Hudson that he was told to get on blood pressure medication and that he never did so. (T. 265). He reported that he is aware of the local free clinic, but Dr. Hudson said that Plaintiff was "noncommittal." (T. 265). As the ALJ noted, "there is no indication that [Plaintiff] has availed himself of and exhausted all possible resources available." (T. 21). Although Plaintiff reported having frequent headaches, he does not take anything for them and only reported that he takes Ibuprofen for other pain. (T. 214, 265). *See Hepp v. Astrue*, 511 F.3d 798, 807 (8th Cir. 2008) (moderate, over-the-counter medication for pain does not support allegations of disabling pain). A claimant's allegations of disabling pain may be discredited under the third Polaski factor by evidence that the claimant has received minimum medical treatment and/or has taken medications for pain only on an occasional basis. *See Cline v. Sullivan* 939 F.2d 560, 568 (8th Cir. 1991) (citing: *Williams v. Bowen*, 790 F.2d 713 (8th Cir.1986)).

Additionally, Plaintiff did not originally allege pain in his leg, toe, arm or elbow as a basis for his disability claim, although he discussed these problems during his hearing. The fact that Plaintiff did not allege these ailments as a basis for his disability in his application for disability

7

benefits is significant.  *See Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993); *Dunahoo v. Apfel*, 241, F. 3d 1033, 1039 (8th Cir. 2001). He did not indicate that he was taking any medication for pain until after April 12, 2011 when he indicated that he was taking Ibuprofen.  (T. 214).  *See Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993) (pain which can be remedied or controlled with over-the-counter analgesics normally will not support a finding of disability).  He also did not indicate that he had a diminished ability to concentrate and that he needed reminding and written instructions to care for his personal needs until several months after he applied for benefits.  (T. 215).

### b.        Physical activities

There is no medical evidence to document Plaintiff's disabling pain.  However, an ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.  *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective complaints: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions.  *See id.*  The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject Plaintiff's complaints. *Masterson v. Barnhart,* 363 F.3d 731, 738 (8th Cir. 2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir.2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.*  The ALJ specifically noted these factors and used them to analyze the credibility of Plaintiff's statements in consideration of the entire case record. (T. 19).  Although the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to

produce the alleged symptoms, he found that Plaintiff's statements regarding the intensity, persistence and limiting effects of the symptoms were not credible.  (T. 20).

The ALJ made this determination by considering several factors.  First, he noted that Plaintiff was able to perform activities of daily living, while noting the difficulty in assessing this information to a "reasonable degree of certainty."  (T. 20).  However, Mara Fisk, a friend who completed the Third Party Function Report, and Plaintiff both say that Plaintiff is able to tend to his personal care, make his own meals, take care of a dog, socialize and do household chores.  (T. 166, 167, 169, 176).  Plaintiff also stated that he can handle his finances, goes to the store occasionally and rides in a car.  (T. 168). Although Plaintiff said during his hearing that he starts getting severe pain after walking less than a block, he indicated that he walks "at least once a week" and has to stop and rest after "a few blocks." (T. 43, 169, 170).  Additionally, the Plaintiff says that he has no problems getting along with others and he plays cards with friends.  (T. 169).  In spite of Plaintiff's allegations that he has difficulty concentrating, Mara Fisk reports that Plaintiff can concentrate on a movie or a conversation for up to two hours and that she and Plaintiff routinely talk about books and shows that they have read or seen for the same duration.  (T. 178, 180).  Such activities are inconsistent with disabling pain. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).  Moreover,

"acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain." *Medhaug v. Astrue,* 578 F.3d 805. Cf. *Reed v. Barnhart*, 399 F.3d 917, 923-24 (8th Cir. 2005); *Riggins v. Apfel*, 177 F.3d 689, 692 (8th Cir. 1999) (finding activities such as driving his children to work, driving his wife to school, shopping, visiting his mother, taking a break with his wife between classes, watching television, and playing cards were inconsistent with plaintiff's complaints of disabling pain).

The ALJ then discussed each witness and the weight that he assigned to the witness. (T. 22). The ALJ said that he gave great weight to the opinion of Dr. Robert Hudson. (T. 22). Dr. Hudson found no significant limitations in Plaintiff's adaptive ability and that he is able to cook, clean dishes, use food stamps and control his money. (T. 267). He also stated that there are no significant limitations in Plaintiff's ability to interact socially or in his communication ability. (T. 267). He noted limitations on Plaintiff's ability to work by saying that the Plaintiff would require "very close supervision," and Plaintiff performed poorly on digits backward in regard to sustaining concentration, having to use more processing time to answer questions and not being persistent enough to follow through with his appointments the last time that he applied for benefits. (T. 268).

The ALJ assigned no weight to the conclusions of Dr. Subramanium because alcohol was detected by the physician during the test. (T. 21). The ALJ assigned little weight to the state agency medical consultants' physical and mental assessments because they did not meet Plaintiff and did not consider the combined effect of Plaintiff's impairments. (T. 22). Although the ALJ said that he considered Plaintiff's testimony, he gave little weight to it because Plaintiff's ability to tend to daily living activities and to function socially in conjunction with the medical evidence reflected a "significant functional capacity" and not an individual who is unable to sustain work due to

10

medically determinable impairments.

The court finds no error with the ALJ's interpretation of the record concerning Plaintiff's physical impairments, including Plaintiff's subjective complaints.

### 2.      Mental Impairments

Plaintiff alleges depression, mood disorder and personality disorder.  He alleges that these impairments affect his ability to concentrate and complete tasks.

### a.      Medical evidence

Plaintiff alleges that he last worked on July 1, 2007. (T. 184).  He alleged that he experienced problems concentrating as part of his Function Report, dated Feb. 18, 2011.  (T. 170). Dr. Hudson examined Plaintiff on March 21, 2011 and diagnosed him with a mood disorder, personality disorder, alcohol dependence and alcohol abuse during Plaintiff's Mental Diagnostic Evaluation set up through the SSA.  (T. 265, 267).  Dr. Hudson noted that Plaintiff did not have a history of any other psychiatric treatment and that he was not taking any psychiatric medication at the time of the evaluation.  (T. 266).  There is no indication in the record that Plaintiff ever received any other mental evaluation other than the one performed by Dr. Hudson.  Plaintiff informed Dr. Hudson that he was struck "in the head with a baseball bat in about 1984."  (T. 265). After being involved in a motor vehicle accident, Plaintiff received a CT scan on his head on December 15, 2007.  (T. 329). It was noted that there was "lucency in the anterior portion of the right temporal lobe, probably representing encephalmalacia from an old infarct."  (T. 329).  However, it was also noted that there was "no acute hemorrhage or mass."  (T. 329).  Similar results were found when Plaintiff went to Baxter Regional on July 29, 2008 for treatment for heat exhaustion and another CT scan was completed on his head. (T. 325). While an "old right temporal infarct with encephalomalacia" was

11

noted, it was also explained that there was no skull fracture, "no acute hemorrhage, no infarction, no mass, [and] no mass effect." (T. 325. Additionally, it was noted that there was "no evidence of acute completed infarction . . . and no change from the old study." (T. 325). However, Plaintiff did inform Dr. Hudson that he had been in rehabilitation approximately six times for alcohol abuse. (T. 266). Dr. Hudson noted that Plaintiff was cooperative and not depressed. (T. 266). He stated that there was nothing peculiar in Plaintiff's flow of thought, but he did note that Plaintiff had an "apparent 'hitch' in his mental processing" because he would take a few seconds to reply to questions. (T. 266-267). Although he stated that Plaintiff "has documented brain damage and is probably developing some functional problems from TBI and the years of excessive alcohol consumption," he stated that there was not enough data for a formal diagnosis. (T. 267). Dr. Hudson did not note any depression in his evaluation. (T. 266). He found that Plaintiff smiled, laughed, did not cry, did not express anger and was social and affable. (T. 266, 267).

Evaluating mental impairments is often more complicated than evaluating physical impairments. *Obermeier v. Astrue*, Civil No. 07-3057, 2008 WL 4831712, at *3 (W.D.Ark. Nov. 3, 2008). With mental impairments, evidence of symptom-free periods does not mean a mental disorder has ceased. *Id*. Mental illness can be extremely difficult to predict, and periods of remission are usually of an uncertain duration, marked with the ever-pending threat of relapse. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001). Adding to these difficulties, individuals with chronic psychotic disorders often structure their lives in a way to minimize stress and reduce their signs and symptoms. *Id*. Given the sometimes competitive and stressful conditions in which people work, individuals with mental impairments "may be much more impaired for work than their signs and symptoms would indicate." *Id.; Obermeier*, 2008 WL 4831712, at *3.

### b.    Physical activities

The ALJ stated that the claimant had a medically determinable mental impairment and then continued to evaluate the four broad functional areas as required by the evaluation process. (T. 23). To evaluate mental impairments, the ALJ must follow the procedures set out in §§ 404.1520a and 416.920a. The ALJ went through each functional area and noted Dr. Hudson's findings regarding each functional area. (T. 23-24). The first functional area to be evaluated is the activities of daily living. §§ 404.1520a(c)(4), 416.920a(c)(4). Regarding this functional area, the ALJ noted that Dr. Hudson indicated that there would be no significant limitations on Plaintiff's adaptive ability. (T. 23). Dr. Hudson noted that Plaintiff could drive but that not having a driver's license was the only reason that he did not, he shops, helps with cleaning, cooks, uses food stamps and keeps up with them. (T. 267). As noted above, Plaintiff and Mara Fisk both support this account.

The ALJ then noted that Plaintiff had no limitation regarding social functioning, according to Dr. Hudson. (T. 23). Dr. Hudson noted that Plaintiff came off as "social and affable." (T. 267). He also noted that Plaintiff has visitors who come by to visit and watch TV. (T. 267). Plaintiff stated that he plays rummy with others once or twice a month and that he has no problems getting along with others. (T. 169, 170). Mara Fisk's third party function report stated that she spent eight hours a day with Plaintiff and talks with Plaintiff about movies and books that they have enjoyed. (T. 173). She also stated that Plaintiff plays cards with an old friend about once a week. (T. 174). Dr. Hudson also noted that there is no significant limitation in Plaintiff's communication ability. (T. 267).

Next, the ALJ evaluated the evidence regarding the third functional area: concentration, persistence or pace. (T. 24). The ALJ said that Dr. Hudson found mild limitations regarding this

13

functional area.  (T. 24).  Specifically, Dr. Hudson said that Plaintiff would require "very close supervision" and that "nothing requiring judgment would be left to him alone." (T. 268).  He also stated that results regarding Plaintiff's ability to attend and sustain concentration on basic tasks were "mixed" but that it needed to be noted that Plaintiff performed poorly on digits backward. (T. 268). He also noted that Plaintiff was not persistent enough to follow through with keeping his appointment when he last applied for benefits.  (T. 268).  He stated that Plaintiff exhibited limitations on his ability to complete tasks in a timely fashion by having an increased processing time over "what would be expected for his overall level of performance." (T. 268).  However, we also note that Plaintiff continued to work with these alleged problems until 2007. *See Gowell v. Apfel*, 242 F.3d 793, 798 (8th Cir. 2001) (claimant worked with her impairments for years). Additionally, he remains capable of handling basic tasks as he states that he goes shopping, can pay bills, counts change and handles a savings account.  (T. 168).  Mara Fisk also corroborates these assertions, saying that Plaintiff can cook and clean for about an hour a day and will perform yard work when needed for about an hour at a time, although he does need some encouragement to perform these tasks.  (T. 177).

Finally, the ALJ evaluated the fourth functional area of episodes of decompensation and stated that Plaintiff had experienced no episodes of decompensation, which have been of extended duration.  (T. 24).  The procedure states: (1) If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.  §§ 404.1520a(d)(1), 416.920a(d)(1). The ALJ concluded that because there were "no more than 'mild' limitations in any of the first three

14

functional areas and 'no' episodes of decompensation," the impairments, singly and in combination, were nonsevere.  (T. 24).  He further stated that the physical and mental impairments, considered singly and in combination, do not significantly limit the Plaintiff's ability to perform basic work activities.  (T. 24).

### B.      Development of the Record:

The ALJ has a duty to fully and fairly develop the record.  *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for him to make an informed decision.  *See Payton v. Shalala*, 25 F.3d 684, 686 (8th Cir. 1994); *Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989).

There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis. *Battles v. Shalala,* 36 F.3d 43 at 45 (C.A.8 (Ark.), 1994).  The ALJ described the evidence that he used to make his findings, the weight he gave the evidence and the procedures that he followed.  (T. 19-24).  In this instance, the court does not believe that the ALJ committed any error in failing to develop the record concerning Plaintiff's physical impairments.  Nor does the court find that the ALJ committed any error in failing to develop the record concerning Plaintiff's mental impairments.  Additionally, this court finds that there was substantial evidence to support the ALJ's findings that Plaintiff does not have a severe impairment or combination of impairments that significantly limits his ability to work.

### III.    Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence

15

supporting the ALJ's decision, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated  this <u>27</u>  day of <u>September</u> 2013.

<u>/s/ J. Marschewski</u>

HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE

16